# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE CS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case number 4:07cv0468 TCM |
| | ) |
| THE CAPUCHIN FRANCISCAN | ) |
| FRIARS, d/b/a THE CAPUCHIN | ) |
| FRANCISCAN FRIARS PROVINCE | ) |
| OF MID-AMERICA, ST. PATRICK | ) |
| FRIARY, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This personal injury action is before the Court on the opposed motion of The Capuchin Franciscan Friars, doing business as The Capuchin Franciscan Friars Province of Mid-America, St. Patrick Friary ("Defendant") for summary judgment on the grounds that the five remaining counts – Count IV (fraud), Count V (intentional infliction of emotional stress), Count VI (negligence), Count VIII (vicarious liability), and Count IX (intentional failure to supervise) – are barred by the five-year statute of limitations in Mo.Rev.Stat. §§ 516.120 (requiring, inter alia, an action for fraud or personal injury to be brought within five years) and 516.170 (permitting five-year statute of limitations to begin to run when plaintiff has attained age of twenty-one years).

## Background

John Doe ("Plaintiff") was born on June 20, 1968, and became twenty-one years of age on June 20, 1989. (Def. Stip.[1] ¶ 1.)

Plaintiff's first sexual experience was when he was a student at St. Paul the Apostle Grade School. (Id. ¶ 3.) When there, and at the approximate age of twelve years, Plaintiff had a sexual encounter with Father James Thiel. (Id.) According to Plaintiff's report to a psychiatrist, Stephen E. Peterson, M.D., this was his first of many sexual encounters with Father Thiel. (Def. Ex. C at 7-8.) No condoms were used in any sexual encounter between Plaintiff and Father Thiel. (Id. at 13.) After the relationship and Plaintiff's position as an altar boy ended, Plaintiff felt shame for having oral sex without his parents' knowledge or inquiry. (Id. at 9.) He eventually gravitated back to the church in which he was baptized, the African Methodist Episcopal ("AME") Church. (Id.; Def. Ex. A at 1.)

From 1982 to 1986, and from ninth grade through twelfth grade, Plaintiff attended Cardinal Ritter High School ("Cardinal Ritter"). (Def. Stip. ¶ 2.) Plaintiff alleges he was sexually abused by three priests at the school – Fathers Michael Barry, Charles Gaiter, and Thaddeus Posey. (Id. ¶ 5.)

Condoms were never used in any sexual encounter between Plaintiff and Father Barry. (Id. ¶ 6; Def. Ex. C at 9.) Plaintiff's relationship with Father Barry ended in 1982. (Def. Ex. C at 9.) Father Barry became ill then, reportedly with leukemia. (Id.) Having

---

[1]"Stip." refers to those uncontroverted material facts admitted by the opposing party.

heard a rumor that Father Barry later died from AIDS, Plaintiff now wonders if his positive HIV status was a result of the unprotected sex with Father Barry. (Pl. Aff. ¶ 7.)

Plaintiff's sexual relationship with Father Posey began when Plaintiff was in his junior year and lasted until early 1984. (Def. Stip. ¶ 9; Pl. Aff. ¶ 5.) At times, Plaintiff had sex with Father Posey and a group of men. (Pl. Aff. ¶ 5.)

After Plaintiff graduated from Cardinal Ritter in 1986, he attended Forest Park Community College and enrolled in a Reserve Officers' Training Corps ("ROTC") program. (Def. Ex. C at 12.) He tested positive for the HIV virus when at a ROTC summer camp in 1989. (Id.) By 1998, he required medication for HIV-related illnesses. (Def. Stip. ¶ 17.)

In 1999, after a discussion with his cousin, Vanessa Dixon, Plaintiff came to understand that the incidents with Father Barry constituted sexual abuse. (Pl. Aff. ¶ 2; Def. Ex. A ¶ 17.) In 2002, Plaintiff discussed the abuse by Father Posey with a good friend, Kimberly St. Clair. (Id. ¶¶ 11, 12.) It was not until 2004, however, when Plaintiff entered therapy and begin to understand that the sexual abuse by Father Posey and the other priests had caused him injury. (Pl. Aff. ¶ 3.) Up to then, Plaintiff had believed that his experiences with Father Posey and other priests at Cardinal Ritter were normal sexual affairs for a young gay man. (Id. ¶ 2.)

Also in 2004, Plaintiff filed his first lawsuit alleging sexual abuse by various priests, including Fathers Thiel and Posey. (Def. Stip. ¶ 20.) That action is pending in the Circuit Court for the City of St. Louis and is set for trial on February 4, 2008, following a denial of a motion for summary judgment filed by Father Posey. (Def. Ex. D.)

On January 26, 2007, Plaintiff filed the instant lawsuit against Defendant. This action was also filed in the Circuit Court for the City of St. Louis, but was removed to this court on diversity grounds.

Citing the five-year statute of limitations in Mo.Rev.Stat. § 516.120(4) for personal injury actions, Defendant moves for summary judgment on the grounds that Plaintiff's cause of action accrued in 1986 or 1989. Therefore, the statute of limitations began to run when Plaintiff became twenty-one years old, see Mo.Rev.Stat. § 516.170, and had run as June 20, 1994. Alternatively, Defendant argues that the statute of limitations began to run in 1999 when Plaintiff disclosed the sexual abuse by Father Posey to a friend or cousin and had run by late summer 1994.

Plaintiff counters that the statute of limitations did not begin to run until 2004. Relevant to this position is an affidavit of Dr. Peterson submitted in the still-pending state court action set for trial next month. Dr. Peterson avers, in relevant part:

> Based on my clinical experience, psychiatric assessment of [Plaintiff] an [sic] understanding of the professional literature, is [sic] my professional opinion to a reasonable degree of psychiatric certainty that an average sexual abuse victim in [Plaintiff's] position would have been put on notice of his injuries and damages *only* after he connected his homosexual preference with having been victimized by the four priests. . . .
>
> . . . [I]t is my professional opinion to a reasonable degree of medical/psychiatric certainty that [Plaintiff] was put on notice that he had been injured by the acts of Father Posey and had substantial damage during a process of self-examination which began in 1999. Then he nearly attempted suicide after a troublesome breakup and the impact of male abusiveness finally started to overcome his defenses. This was the beginning of the final essential step to understanding his injury and damages. This process was not completed until 2004 when he finally entered psychotherapy to address his sexual identity and the sexually abusive actions of the priests. Before then, [Plaintiff] was so programmed by his initial pervasive sexual training at the hands of Father

>    Thiel and three other priests that he did not recognize his coerced homosexual sexual object choice as abnormal. . . .

(Def. Ex. A at 11, 13-34.)  (Alterations and emphasis added.)

## Discussion

"Rule 56(c) [of the Federal Rules of Civil Procedure] 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" **Erenberg v. Methodist Hosp.**, 357 F.3d 787, 791 (8th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (alteration added).  An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law."  **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).  The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor.  See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts.  See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  "'Evidence, not contentions, avoids summary judgment.'"  **Larry v. Potter**, 424 F.3d 849, 851 (8th Cir. 2005) (quoting Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005)).

At issue now is whether the statute of limitations as run as a matter of law on Plaintiff's remaining counts.

"A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations." **Nettles v. American Tel. and Tel. Co.**, 55 F.3d 1358, 1362 (8th Cir. 1995). "'Missouri, the forum, considers statutes of limitations issues procedural, and, therefore, governed by Missouri law.'" **Id.** (quoting Renfroe v. Eli Lilly & Co., 686 F.2d 642, 646 (8th Cir. 1982)).

Under Missouri law, the statute of limitations is an affirmative defense that must be proved by the party asserting it. **Powel v. Chaminade College Preparatory, Inc.**, 197 S.W.3d 576 (Mo. 2006) (en banc); **Lomax v. Sewell**, 1 S.W.3d 548, 552 (Mo. Ct. App. 1999). Although it is normally a question of law for the court to decide, **id.**, "[w]here the issue of limitations involve determinations [of when a claim begins to accrue], summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determinations can be matter as of matter of law," **Hildebrandt v. Allied Corp.**, 839 F.2d 396, 399 (8th Cir. 1987) (first alteration added) (interim quotations omitted). See also **Allen v. Kuehnle**, 92 S.W.3d 135, 139 (Mo. Ct. App. 2003) ("[W]hen contradictory or differing conclusions can be drawn from the evidence as to whether the statute has run, it is a question of fact for the jury to decide.") (alteration added); **Hogan v. Armstrong World Indus.**, 840 S.W.2d 230, 235 (Mo. Ct. App. 1992) ("Because contradictory conclusions may be drawn from the evidence, the running of the statue of limitations was a jury question.").

Under Missouri law, the five-year statute of limitations in § 516.120, accrues "when the damage resulting therefrom is sustained and is capable of ascertainment . . . ."

Mo.Rev.Stat. § 516.100 (alteration added). "'The phrase "capable of ascertainment" has never been given a precise definition.'" **Allen**, 92 S.W.3d at 138 (quoting Bus. Men's Assurance Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. 1999) (en banc)). "Capable of ascertainment refers to the fact of damages, rather than to the exact amount of damages." **Id.** at 139. "It has been construed to mean 'the moment that plaintiff's damages are substantially complete.'" **Bus. Men's Assurance Co.**, 984 S.W.2d at 507 (quoting Lockett v. Owens-Corning Fiberglas, 808 S.W.2d 902, 907 (Mo. Ct. App. 1991)). Additionally, the applicable statute of limitations does not begin to run until the person entitled to bring the action becomes twenty-one years old if the cause of action accrued prior to that. Mo.Rev.Stat. § 516.170; **J.D. v. M.F.**, 758 S.W.2d 177, 178 (Mo. Ct. App. 1988).

Defendant first argues that Plaintiff's cause of action accrued in 1986 and, consequently, the statute of limitations expired when he became twenty-one years old on June 20, 1994. Defendant specifically argues that a reasonable person would have been placed on notice in 1986 that an injury and substantial damages occurred and would then have undertaken to ascertain the extent of those damages, citing (a) Plaintiff's consistent recall of Father Posey's actions, therefore this is not a case of repressed memory; (b) Plaintiff's age – he was in his final two years of high school – at the time of those action; (c) the shame Plaintiff felt about his relationship with Father Posey; (d) his realization that Father Thiel's open-door baths were grooming him to assess his potential for future sexual exploitations; (e) his awareness in high school that he was having unprotected sex with Father Barry; and (f) Plaintiff's awareness of Father Barry's illness in high school and his decision that he could "live the secret." (Def. Ex. C at 9.)

Alternatively, Defendant argues that Plaintiff's cause of action accrued in 1989 when he was diagnosed with HIV and, therefore, the statute of limitations expired by the end of the summer of 1994. In support of this argument, Defendant contends that Plaintiff was then placed on notice of Father Posey's sexual abuse and should have, as a reasonable person, inquired about a potentially actionable injury.

Defendant also argues that Plaintiff's action accrued at the latest in 1999 when he confided to his friend or cousin that he had been sexually abused by Father Posey.

On the other hand, Plaintiff argues that his cause of action did not accrue until he began psychotherapy and (i) learned that his sexual encounters with Fathers Barry, Posey, and Gaiter were not normal behavior and were abusive and (ii) understood that this abusive behavior was injurious to him.

Both parties rely heavily on **Powel**, supra. The issue in that case was when the statute of limitations began to run on claims that the plaintiff had been sexually abused by two teachers when a high school boarding student. 197 S.W.3d at 577. The plaintiff alleged that he suffered from repressed memory until he regained the memories in 2000, when was forty-one years old. **Id.** at 578. The suit was filed in 2002. **Id.** at 577. Reversing a lower court's decision that the damages were "capable of ascertainment" when the abuse occurred and that the claims were time-barred, the Missouri Supreme Court examined the history of the "capable of ascertainment" test and noted that the test was an objective one. **Id.** at 581-84. "The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would

have undertaken to ascertain the extent of the damages." **Id.** at 584. If the facts relevant to the "capable of ascertainment" issue are uncontested, "the statute of limitations issue may be decided by the court as a matter of law." **Id.** at 585. "'However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide.'" **Id.** (quoting Lomax, 1 S.W.3d at 552-53).

As noted above, Defendant argues that Plaintiff's cause of action accrued in 1986 because his memory of the sexual abuse was not repressed, he has always been aware of Father Posey's abuse, he felt shame then about his relationship with Father Posey, and he knew as early as grade school that he was being groomed by Father Thiel for future sexual manipulation. "Only when [plaintiff] regained the repressed memories would the victim for the first time have 'reason to question' defendant's conduct and have information sufficient 'to place a reasonably prudent person on notice of a potentially actionable injury.'" **Id.** at 584 (quoting Bus. Men's Assurance Co., 984 S.W.2d at 507). Defendant relies heavily on this language of repressed memories, correctly noting that Plaintiff has always recalled the acts at issue; however, **Powel** also warns that "[t]he issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." **Id.** (alteration added).

Unlike in **Powel**, the facts in the instant case include a report and affidavit by Plaintiff's expert witness.[2] According to Dr. Peterson, an "average" sexual abuse victim in Plaintiff's position would not have been put on notice of "his injuries and damages" until after he connected his homosexual preference with having been victimized by the priests. (Def. Ex. E at 11.) Dr. Peterson further opines that the process of Plaintiff's self-examination began in 1999, but was not completed in 2004 when he entered psychotherapy to address the issues of his sexual identity and the priests' sexual abuse. (Id. at 13-14.)

Defendant argues that the Court cannot rely on the expert opinion relative to a reasonable person's standard. The Court disagrees. An expert witness may express an opinion "when the subject matter of the opinion is not of common knowledge so that the opinion of an expert witness would be helpful to the jury in the determination of the issues before it." **McKinley v. Vize**, 563 S.W.2d 505, 508 (Mo. Ct. App. 1978), distinguished on other grounds, Rice v. Haltom, 599 S.W.2d 248, 249-50 (Mo. Ct. App. 1980). See also **State v. Edwards**, 60 S.W.3d 602, 613-14 (Mo. Ct. App. 2001) (discussing the difficulty for lay persons in understanding why a battered spouse does not escape the abusive situation and holding that, although it may appear to the common sense of a reasonable person that such a battered spouse should simply escape the abuse, the issue often required expert opinion); **State v. Cooley**, 766 S.W.2d 133, 138 (Mo. Ct. App. 1989) (holding in an obscenity case that "[i]t has long been the general common law rule that neither a layman nor an expert

---

[2]Defendant apparently does not challenge at this point Dr. Peterson's qualifications as an expert witness.

could testify concerning conformance to the standard of a reasonable man in respect to matters of common experience").

The Court finds that the issue raised by Dr. Peterson's opinion is not a matter of common experience for the reasonable person and that expert testimony will assist the fact-finders on this issue.[3]

In summary, the Court finds that there is a factual dispute resulting in a question for the jury on the statute of limitations issue as to Counts V through IX, inclusive.[4] Specifically, the jury must decide when a reasonable person would have been put on notice that an injury and substantial damages may have occurred from the complained-of actions and would then have undertaken to ascertain the extent of his or her damages. See **Powel**, 197 S.W.3d at 584.

The Court reaches a different conclusion, however, as to the fraud count, Count IV.

---

[3]Citing **United States v. White Horse**, 316 F.3d 769, 775 (8th Cir. 2003), Defendant also contends that Dr. Peterson's affidavit contains inadmissible hearsay. The Court disagrees. Dr. Peterson's affidavit is an expert opinion that is not offered to prove the truth of a matter contained in that opinion. Rather, the doctor's opinion is relevant to when Plaintiff became aware of his injuries from the complained-of actions. Moreover, the court in **White Horse** made its finding that a psychologist's opinion that the defendant – on trial for sexually molesting his minor son – did not have a sexual interest in underage boys was not admissible after a Daubert motion and hearing. No such motion was filed in this case, nor is the Court inviting such a motion.

[4]Defendant also argues that Plaintiff was on notice of his damages when he learned that he was HIV positive. How and when Plaintiff contracted the virus is clearly a disputed fact. Moreover, it may have been rumored that Father Barry died of AIDS, but there is no medical or other evidence that connects Plaintiff's illness to him. The suspicion that Plaintiff contracted the HIV virus from Father Barry is speculation and, therefore, not is sufficient to support a motion for summary judgment.

As noted above, Plaintiff was born on June 20, 1968. He turned twenty-one years old on June 20, 1989. On June 20, 2004, fifteen years had passed since his twenty-first birthday. On January 26, 2007, he filed the instant lawsuit.

"Section 516.120(5) gives plaintiff ten years from the commission of the fraudulent act to discover the fraud. § 516.120(5). Should plaintiff fail to discover the fraud within this ten year period, the five year statute of limitations period begins to run at the expiration of the ten years." **Gilmore v. Chicago Title Ins. Co.**, 926 S.W.2d 695, 698 (Mo. Ct. App. 1996).

> Additionally, we believe the reasoning employed by the General Assembly in limiting the time period of § 516.120(5) sheds light on plaintiff's argument. Section 516.280, which acts to toll the statute of limitations when a party's cause of action has been fraudulently concealed, was enacted well before the discovery period for section 516.120(5) was limited to a ten year period. The General Assembly was aware of § 516.280 when it amended § 516.120(5), adding the ten year limit. Knowing that § 516.280 tolled applicable statutes of limitations indefinitely, *the legislature chose to limit the statute of limitations for fraud to a fifteen year maximum*. We believe the General Assembly intended that the statute be tolled for only a limited amount of time.

**Id.** at 699 (interim citations omitted) (emphasis added). "Thus, regardless of the circumstances surrounding the aggrieved party's opportunity to discover the fraud, an action for fraud can be brought, at the latest, fifteen years afer its commission." **In re Estate of Corbin**, 66 S.W.3d 84, 93 (Mo. Ct. App. 2001).

As noted above, § 516.170 starts the statute of limitations running when a plaintiff becomes twenty-one years old if the cause of action accrued before then. Plaintiff became twenty-one in June 1989. Section 516.120(5) mandates that an action for fraud be brought at the latest within ten years after the cause of action accrued, regardless of when or if the

fraud was discovered. Consequently, Plaintiff's fraud claim had to be brought on or before June 20, 2004. It was not. It is untimely.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of The Capuchin Franciscan Friars, doing business as The Capuchin Franciscan Friars Province of Mid-America, St. Patrick Friary, for summary judgment is **GRANTED** as to Count IV and **DENIED** as to Counts V, VI, VII, VIII, and IX. [Doc. 26]

**IT IS FURTHER ORDERED** that the motion of The Capuchin Franciscan Friars, doing business as The Capuchin Franciscan Friars Province of Mid-America, St. Patrick Friary, to submit additional authority is **GRANTED**.[5] [Doc. 48]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of January, 2008.

---

[5]The Court has reviewed the submitted case, **Graham v. McGrath**, – S.W.3d – (Mo. Ct. App. 2007), and has concluded that the holdings therein do not alter the Court's decision. The Court also notes that, as of today's date, the decision has not been released for publication in the permanent law reports.